The SUPERIOR OIL COMPANY,
Appellant,

v.

RAILROAD COMMISSION OF TEXAS
et al., Appellees.

No. 12484.

Court of Civil Appeals of Texas,
Austin.

Jan. 12, 1977.
Rehearing Denied Feb. 9, 1977.

Philip F. Patman, Patman & Patman, Austin, for appellant.

John L. Hill, Atty. Gen., Linward Shivers, Asst. Atty. Gen., Austin, for Railroad Commission of Texas.

Dee J. Kelly, Fort Worth, for Kimball Production Co.

SHANNON, Justice.

This appeal concerns the approval by the Railroad Commission of the bottom hole location of a deviated gas well and involves the construction of the Commission's Rule 11.

Appellant, Superior Oil Company, filed suit in the district court of Travis County appealing an order entered by the Railroad Commission. The order approved the bottom hole location of Kimball Production Company's Kellison Gas Unit Well Number One and assigned to that well a permanent allowable under the field rules in effect for the Block 16 Field in Ward County. After trial to the court, the court entered judgment that appellant take nothing. Appellees are Miles Kimball Company, doing business as Kimball Production, and the Railroad Commission of Texas. We will affirm the judgment of the district court.

In July, 1973, the Commission granted Kimball a Rule 37 permit authorizing Kimball to drill its Kellison Gas Unit Well Number One at a surface location 990 feet from Superior's leaseline. After drilling had be-

gun, Kimball lost a drill bit in the hole. After "fishing" for the bit for eight days, Kimball received permission from the Commission to deviate the hole around the lost bit. At that time the Commission advised Kimball that no allowable for the well would be assigned until after a "Rule 11" hearing establishing the reasonableness of the bottom hole location. Deeper in the hole Kimball lost more equipment. After searching for the equipment for nine days it was again necessary to sidetrack the hole around the lost equipment. The well was finally drilled to a total depth of 12,544 feet. The subsurface location of the well deviated 820 feet from the vertical, although the location was still within Kimball's lease.

After notice the Commission conducted a hearing under its Rule 11 concerning the bottom hole location of the Kimball well. The applicable provisions of Rule 11 are as follows:

"RULE 11. INCLINATION AND DIRECTIONAL SURVEYS REQUIRED (From Old Rule 54)

"I. GENERAL

All wells shall be drilled as nearly vertical as possible by normal, prudent, practical drilling operations. Nothing in this rule shall be construed to permit the drilling of any well in such manner that it crosses property lines (or unit lines in cases of pooling) without special permission.

\*　\*　\*　\*　\*　\*

"III. DIRECTIONAL SURVEYS

(a) When such directional survey shows the well to be bottomed within the confines of the lease, but beyond the prescribed limits, an application may be made to the Commission and exception may be granted for such bottom hole location if, after notice and hearing, it is established that the bottom hole location is a reasonable location.

\*　\*　\*　\*　\*　\*

"IV. INTENTIONAL DEVIATION OF WELLS

(2) If the necessity for directionally deviating the well arises unexpectedly, af-

ter the drilling has begun, the operator shall give written notice by letter or telegram of such necessity to the District Office and to the Commission Office in Austin, and upon giving such notice, the operator may proceed with the deviated drilling. However, before any allowable shall be assigned to the well, a permit shall be obtained from the Commission for such well under the provisions set out in the Commission Rules. The operator proceeds with the drilling of a deviated well under such circumstances at his own risk, and should he fail to show good and sufficient cause for such deviation, no permit will be granted for the production of the well."

At the hearing Superior, as protestant, requested permission to present evidence regarding fair share of recoverable hydrocarbons, alleged net uncompensated drainage, and the competitive advantage that Superior claimed would be enjoyed by the Kimball well as a result of its deviation. The Commission refused to permit Superior to introduce that evidence.

After the hearing the Commission approved the bottom hole location of the well and assigned a permanent allowable to it. In doing so the Commission did not consider the issue of waste and confiscation, nor any evidence with respect to such issues. Superior appealed from the Commission's order to district court.

By its suit Superior contended (1) that the Commission's order approving the final subsurface location was arbitrary and capricious because the Commission refused to consider evidence of drainage and unfair competition allegedly resulting from the deviated location; (2) the Commission's order was not supported by substantial evidence; and (3) the Commission's order is invalid because the well was not drilled in substantial compliance with the authorizing permit.

■ Upon trial and over appellees' objection, the district court received into evidence testimony of Superior's witnesses relating to drainage, but by its final disposition of the case, the court necessarily deter-

mined that evidence of drainage is not admissible in a Rule 11 hearing.

Upon request, the court filed "findings of fact" and conclusions of law. The court found, among other things, that Kimball used all of the normal, customary, and recommended industry procedures in drilling the well in order to maintain a straight hole. The gas well was bottomed within its unit boundary and was never off the unit boundary at any time during the drilling operations. The well was intentionally deviated on two occasions in order to avoid drilling through lost equipment in the hole, and on both occasions the deviation was away from Superior's leaseline. Before deviating its well, Kimball applied for and received permission from the Commission to deviate the well around the lost equipment. There were no bottom hole restrictions contained in the Rule 37 permit granted by the Commission for the gas well.

The district court concluded that Rule 11, as construed and applied by the Commission in this case was a valid rule. The court concluded further that the order approving the bottom hole location of the well was supported by substantial evidence in that Kimball utilized all of the normal, customary, and recommended industry procedures in drilling the well in order to maintain a straight hole. Finally, the court concluded that the amount of allowable to be assigned the well was not an issue in the bottom hole location hearing before the Commission, only whether the well should be assigned an allowable at all or removed from the Commission's proration schedule.

A Rule 11 hearing, as viewed by Superior, contemplates a consideration of evidence of drainage and unfair competition. As the Commission refused to admit such evidence, Superior says the Commission's order approving the bottom hole location was arbitrary and capricious. In support of its position Superior says that the determination of a "reasonable location" under Rule 11 necessarily involves a consideration of evidence concerning correlative rights. Superior argues further that when a well is drilled and completed in a manner so as to give it an "unfair competitive advantage" over its neighbors, such as by closely approaching its offsetting property line, the Commission, in a Rule 11 hearing, has the duty to adjust its allowable production in order to maintain the fair-share rule and protect the correlative rights of offset operators.

A reading of Rule 11 demonstrates that it is concerned with the causes of deviation and the justification for such deviation. There is no provision in Rule 11 which requires the operator to justify its allowable in order to obtain approval of the bottom hole location of the well. Rule 11 permits the operator to have an allowable assigned to the well under the field rules if it can demonstrate "good and sufficient cause" for the deviation and if the bottom hole location is a "reasonable" location. If the operator cannot demonstrate good and sufficient cause for deviating the well, the Commission is empowered to cancel its allowable and to order the well removed from the proration schedule for the field.

Superior relies mainly upon some language in *Stewart v. Humble Oil & Refining Co.*, 377 S.W.2d 830 (Tex.1964), for the proposition that evidence of drainage must be considered in determining the reasonableness of a bottom hole location under Rule 11. Although the wells in *Stewart* were drilled prior to the adoption of Rule 54, the predecessor of Rule 11, the court had to determine the reasonableness of the bottom hole location of deviated wells. The Commission had approved the bottom hole location of *Stewart's* wells, but the district court entered judgment that the Commission's order was unreasonable and arbitrary and had enjoined the Commission from approving any allowable for the wells. On direct appeal, the Supreme Court reversed the judgment and dissolved the injunction.

The Court held that the determination of proper well location is a function of the Commission, and not the courts. It is important to observe that the court rejected Humble's contention that *Stewart* had to prove again that the bottom hole location of the well, as deviated, was necessary to prevent confiscation. The Court viewed the

issue as one whether there was substantial evidence to support the Commission's determination that the subsurface locations reasonably complied with the permits issued for drilling the wells. The Court held that Humble had failed to discharge its burden of showing that there was no substantial evidence to support the Commission's determination.

It is true that the Court in *Stewart* discussed evidence of drainage from Humble's property. It does not follow, however, that the Court *held* in *Stewart* that a consideration of evidence concerning drainage is mandatory when determining the reasonableness of a bottom hole location under Rule 11. Before the discussion of drainage in the opinion the Court had previously held that the district court had erred. The subsequent discussion of drainage by the Court did not form the basis for the Court's holding but was an effort by the Court to support its holding by relating additional facts.

Superior has presented no reasons which justify requiring the Commission to consider evidence of drainage in a Rule 11 hearing. Before Kimball's Rule 37 permit was issued, notice was given Superior and other adjoining landowners. Superior had an opportunity in that hearing to present evidence of drainage and unfair competitive advantage. The Rule 37 hearing is designed for the sort of adversary proceeding in which parties may assert their interests in and to the subsurface minerals. The Commission had authority to issue the Rule 37 permit only after finding that the permit was necessary to protect Kimball's property from confiscation. Superior could have appealed the order granting the Rule 37 permit to the district court of Travis County, and it is our understanding from the briefs that Superior did so.

As is apparent, our view is that a Rule 11 hearing does not contemplate a consideration of evidence of drainage, and therefore the Commission did not err in refusing to receive that evidence.

■ In connection with Superior's second contention, the Commission's order approv-

ing the bottom hole location of the well was supported by substantial evidence. Kimball showed good and sufficient cause for the deviation and Kimball utilized the normal, customary, and recommended industry procedures in drilling the well in order to maintain a straight hole. It follows that under these circumstances the bottom hole location was a reasonable one.

■ Finally, Superior contends that the Commission's order was invalid because the well was not drilled in substantial compliance with its permit to drill. Superior relies upon *Railroad Commission v. Magnolia Petroleum Co.*, 125 S.W.2d 398 (Tex.Civ. App.1939, writ ref'd), for the proposition that if Kimball's well were not drilled in compliance with its drilling permit, the well was illegal and was not entitled to have an allowable. The operator in *Magnolia* attempted to commence drilling forty-nine feet south of the *surface location* authorized by the drilling permit. The bottom hole location of the well was not involved in *Magnolia*. In the case at bar, Superior does not claim that the *surface location* of the Kimball well was different from that authorized in the drilling permit.

The judgment is affirmed.

Affirmed.